UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSE RODRIGUEZ,
    *Plaintiff*,

    v.                                    No. 3:22-CV-00525 (VAB)

BRADEY et al.,
        *Defendants.*

## INITIAL REVIEW ORDER

Jose Rodriguez ("Plaintiff"), currently confined at Brooklyn Correctional Institution in

Brooklyn, Connecticut, has filed a Complaint *pro se* under 42 U.S.C. § 1983. *See* Compl., ECF

No. 1 (Apr. 11, 2022) ("Compl.") Mr. Rodriguez names seven Defendants, Lieutenant Bradey,

Correctional Officers McGunndy, John Doe 1, and John Doe 2, Deputy Warden John Doe 3,

Lieutenant Shift Supervisor John Doe 4, and Warden Jane Doe. *Id.* Mr. Rodriguez asserts claims

for unsafe conditions of confinement, use of excessive force, denial of due process, denial of

equal protection, and supervisory liability. *Id.* ¶¶ 109–15 Although Mr. Rodriguez captions his

document as "Complaint for Monetary Damages and Declaratory Relief," he seeks only damages

from the Defendants. *Id.* ¶¶ 116–20.

## I.    BACKGROUND

Mr. Rodriguez allegedly had been transferred from Hartford Correctional Center to

Bridgeport Correctional Center and placed in "cell block 1 unit (39-A) 7 wing 2 cell." Compl. ¶¶

11–12. On April 4, 2021, Officer McGunndy allegedly told Mr. Rodriguez that he and his

cellmate would be subjected to a strip search for pruno, an alcoholic beverage made in prison. *Id.*

¶ 13. Officer McGunndy allegedly came to Mr. Rodriguez's cell with Officers Doe 1 and Doe 2.

*Id.* ¶ 14.

The three officers allegedly entered Mr. Rodriguez's cell without a lieutenant or video camera operator being present. *Id.* ¶ 15. Officer McGunndy allegedly called Mr. Rodriguez "bitch" and "pussy" and made derogatory comments about the size of his genitalia. *Id.* ¶ 16. Allegedly, when Mr. Rodriguez questioned the absence of a lieutenant and camera operator and asked why a strip search was required, the officers allegedly laughed at him. *Id.* ¶¶ 17–18. Mr. Rodriguez allegedly asked Officer McGunndy why he was doing this and asked Officers Doe 1 and Doe 2 why they were permitting it, and they did not answer. *Id.* ¶ 19. Mr. Rodriguez then allegedly accused the officers of being homosexual and they became angry. *Id.* ¶ 21.

The three officers allegedly attacked Mr. Rodriguez, punching him in the face and body and stomping on his legs, while Mr. Rodriguez tried to shield himself from the assault. *Id.* ¶¶ 22–23. Officers Doe 1 and Doe 2 allegedly grabbed Mr. Rodriguez by the arms and held him on the floor, while Officer McGunndy continued to punch him. *Id.* ¶ 24. Allegedly, when Officer McGunndy noticed that Mr. Rodriguez was dazed and semi-conscious, he pressed a distress beacon summoning a lieutenant and other officers to the cell. *Id.* ¶ 25.

Allegedly, Officers McGunndy, Doe 1, and Doe 2 placed Mr. Rodriguez in handcuffs before responding officers arrived at the cell. *Id.* ¶ 26. When Lieutenant Bradey, the responding lieutenant, observed Mr. Rodriguez on the floor in handcuffs with visible redness on his face and bleeding from his leg, he allegedly ordered Officer McGunndy to leave but permitted Officers Doe 1 and Doe 2 to escort Mr. Rodriguez to restrictive housing. *Id.* ¶ 28.

Mr. Rodriguez alleges that he was confused, disoriented, dizzy, and falling in and out of consciousness as he was brought to restrictive housing. *Id.* ¶ 29. When medical staff arrived at restrictive housing to check on him, Mr. Rodriguez allegedly described pain in his head, eye, leg,

and midsection, but the medical staff member said he was okay and the pain would go away. *Id.*
¶¶ 30–31. Mr. Rodriguez alleges that he also told medical staff that he was dizzy and felt as if he
were losing consciousness, but the medical staff and a lieutenant just told him to sign a form
without explaining what the form was. *Id.* ¶ 32. Mr. Rodriguez alleges that he signed the form so
he could lie down. *Id.* ¶ 33.

Mr. Rodriguez alleges that the pain in his head prevented him from sleeping and he asked
the officer on duty to call the medical unit, but the officer refused. *Id.* ¶ 34. Mr. Rodriguez's pain
allegedly continued to the next day, but when he allegedly complained to the officer on duty, the
officer said, "that's what comes with a black eye" and walked away. *Id.* ¶ 35.

Mr. Rodriguez alleges that, when Lieutenant Bradey was touring the unit, he told
Lieutenant Bradey that Officers McGunndy, Doe 1, and Doe 2 assaulted him. *Id.* ¶¶ 37–42, 46.
Mr. Rodriguez allegedly asked Lieutenant Bradey to check the surveillance footage to see that
the Officers did not strip search or even check Mr. Rodriguez's cellmate or check for pruno. *Id.* ¶
43. Mr. Rodriguez allegedly claims that Officer McGunndy chose to pick on him because they
had had a brief disagreement. *Id.* Mr. Rodriguez allegedly told Lieutenant Bradey about his
ongoing pain and the lack of medical care, but Lieutenant Bradey refused to call for medical
attention and did not investigate Mr. Rodriguez's claims. *Id.* ¶¶ 44–45.

Mr. Rodriguez allegedly received a disciplinary report for disobeying a direct order. *Id.* ¶
48. Mr. Rodriguez contends that officers are not permitted to enter an inmate's cell without a
supervisor and camera operator unless the inmate is causing self-harm. *Id.* Mr. Rodriguez alleges
that surveillance footage would show that the Officers took him out of his cell, conducted a pat-
down search, sent him back into the cell, and then entered the cell intending to assault him. *Id.* ¶
49. Mr. Rodriguez alleges that the footage would also show that he was not aggressive and was

following all directions during the pat-down search. *Id.*

Mr. Rodriguez describes his injuries as physical pain, a swollen and bruised eye, a swollen jaw, bruised and swollen shoulder, a small contusion on his leg, and a semi-conscious state. *Id.* ¶ 54. As a result of the alleged assault, Mr. Rodriguez alleges that he has loss of vision and has "lightening in sight" in his left eye. *Id.* ¶ 55. He also alleges that his shoulder has less mobility and range of motion preventing him from performing proper push-ups, pull-ups, or shoulder lifts. *Id.* Mr. Rodriguez alleges that his vision has not improved, his pain has not lessened, and his shoulder has not regained full range of motion. *Id.* ¶¶ 59–60. Subsequent medical examinations allegedly revealed a "small muscle pinch" by his shoulder joint and that the shoulder was slightly out of place. *Id.* ¶ 65.

Mr. Rodriguez alleges that Lieutenant Bradey, Warden Jane Doe, Deputy Warden Doe 3, and Lieutenant Doe 4 told him that procedures were followed and that there was no grievance or appeal available to him in this situation. *Id.* ¶ 58. Mr. Rodriguez alleges that they told him that, if he did not plead guilty to the disciplinary charge, charges would be pressed against him, and he could get an additional five-year sentence for assaulting a correctional officer even though he denied the charge. *Id.*

Mr. Rodriguez alleges that he submitted inmate requests to Warden Jane Doe, Deputy Warden Doe 3, and Lieutenant Doe 4 but received no responses. *Id.* ¶ 68. Allegedly, when Warden Jane Doe and Deputy Warden Doe 3 toured the housing unit, Mr. Rodriguez asked why they had not responded to his requests. *Id.* Allegedly, Warden Jane Doe told Mr. Rodriguez that she did not have to respond and cautioned him about snitching. *Id.*

Mr. Rodriguez alleges that, after he submitted inmate requests about the assault and denial of his appeal rights, Officer McGunndy came to the housing unit, laughed at Mr.

Rodriguez, and said, "how he like that ass whooping don't make me beat that ass again and stop snitching you pussy." *Id.* ¶¶ 71–72. When Mr. Rodriguez complained about this action to Warden Jane Doe, Officer McGunndy allegedly returned to Mr. Rodriguez's housing unit with Officers Doe 1 and Doe 2 and told the block that Mr. Rodriguez was a snitch and had been beaten by them. *Id.* ¶¶ 73–74.

Other inmates allegedly began calling Mr. Rodriguez a snitch and threatening him. *Id.* ¶ 75. Mr. Rodriguez allegedly informed Warden Jane Doe of Officer McGunndy's actions and the threats from other inmates. *Id.* ¶ 76. Mr. Rodriguez allegedly contacted the mental health unit for assistance in coping with the threats. *Id.* He allegedly refused housing because of the threats and warnings that, if he did not refuse housing, the other inmates would attack and stab him. *Id.* ¶¶ 78–79.

Mr. Rodriguez alleges that he was placed on suicide watch in the medical unit. *Id.* ¶ 80. When the mental health provider determined that Mr. Rodriguez was not suicidal, staff allegedly tried to get him to return to general population, but Mr. Rodriguez refused. *Id.* ¶¶ 81–82, 84. Mr. Rodriguez allegedly was transferred to Corrigan Correctional Center. *Id.* ¶ 86. Mr. Rodriguez alleges that, after he was transferred, he was seen by an eye doctor and given glasses to relieve some eye strain, but the doctor was unable to assess the full damage caused by the assault. *Id.* ¶ 88.

## II.   STANDARD OF REVIEW

Under Section 1915A, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the court must assume the truth of the

5

allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## III.   DISCUSSION

Mr. Rodriguez asserts five claims: (1) all Defendants violated his right to safe conditions of confinement; (2) Defendants McGunndy, Doe 1, and Doe 2 used excessive force against him and were deliberately indifferent to his safety; (3) as supervisors, Defendants Jane Doe, Deputy Warden Doe 3, and Lieutenant Doe 4 failed to properly train and review the violations of policy by Defendants McGunndy, Doe 1, Doe 2, and Bradey; (4) all Defendants violated his right to due process; and (5) all Defendants violated his right to equal protection of the laws. Compl. ¶¶ 109–15

At the time of the incident underlying this action, Mr. Rodriguez was a pretrial detainee. Records available on the Connecticut Department of Correction website show that he was sentenced on May 19, 2022. *See Inmate Information: Jose Rodriguez*, CONN. ST. DEP'T OF CORR. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=353805, (last visited Sept. 26, 2022). Thus, his claims are cognizable under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of pretrial detainees are cognizable under the Fourteenth Amendment while claims of sentenced prisoners are cognizable under the Eighth Amendment).

### A.  The Conditions of Confinement Claim

"A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether . . . by deliberate indifference to conditions of confinement, or otherwise." *Id.* at 35. To state a deliberate indifference claim, Mr. Rodriguez must allege facts showing that the challenged condition "pose[d] an unreasonable risk of serious damage to his health, . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal citations quotation marks omitted). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (internal citation and quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Mr. Rodriguez also must show that "the defendant-official acted intentionally to impose the alleged condition" or that he "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

The next part of the deliberate indifference test is the same for claims under the Eighth

and Fourteenth Amendments. *Id.* (applying new objective standard for second part of the deliberate indifference test for pretrial detainees but not changing standard for first part of the test). A condition is objectively serious if it "pose[s] an unreasonable risk of serious damage to [a prisoner's] future health." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2001) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Thus, this component "relates to the seriousness of the injury." *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994).

As Mr. Rodriguez asserts this claim against all Defendants, the Court assumes that the conditions of confinement claim relates to his confinement after Officers McGunndy, Doe 1, and Doe 2 identified Mr. Rodriguez as a snitch to the inmates in his housing unit. *See* Compl. ¶¶ 73–74. Mr. Rodriguez alleges that, because he was labeled a snitch, he was threatened by other inmates and feared for his safety in general population. *Id.* ¶¶ 75–79. As a result, he had to be transferred to another facility. *Id.* ¶ 86. Thus, Mr. Rodriguez has plausibly alleged a condition that posed an unreasonable risk of harm that satisfies the first element.

Officers McGunndy, Doe 1, and Doe 2 were aware of the condition as they allegedly created it. *See id.* ¶¶ 15–25. Mr. Rodriguez alleges that he told Warden Jane Doe of the threats to his safety and the false accusations of being a snitch and that she refused to address the issue. *Id.* ¶¶ 68, 73–74, 76. He does not, however, allege facts showing that Defendants Deputy Warden Doe 3 or Lieutenant Doe 4 were aware of the threats to his safety. In addition, Mr. Rodriguez alleges that Defendant Bradey was involved only immediately after the alleged use of excessive force, and that Defendant Bradey refused to call the medical department and did not investigate the use of force. *Id.* ¶¶ 44–45. Absent allegations suggesting that Defendants Deputy Warden Doe 3, Lieutenant Doe 4, and Bradey knew or should have known that Mr. Rodriguez had been identified as a snitch, Mr. Rodriguez fails to state a cognizable deliberate indifference claim

against them.

Accordingly, the conditions of confinement claim will proceed only against Defendants McGunndy, Doe 1, Doe 2, and Warden Jane Doe.

### B. The Excessive Force Claim

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Frost v. New York City Police Dep't*, 980 F.3d 231, 251 (2d Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)) (internal quotation marks omitted). A pretrial detainee can show that an officer's actions constitute punishment if the actions were "taken with an expressed intent to punish" or if "the actions are not rationally related to a legitimate nonpunitive governmental purpose or . . . appear excessive in relation to that purpose." *Id.* (first quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); and then quoting *Kinglsey v. Hendrickson*, 576 U.S. 389, 398 (2015)) (internal quotation marks omitted).

When determining whether an officer's actions are objectively reasonable, the court considers factors including, but not limited to, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kinglsey*, 576 U.S. at 397.

Mr. Rodriguez alleges that he was told he was being strip-searched for pruno, which seems to be an illogical reason for a strip search. *See* Compl. ¶ 13. In addition, although the Officers allegedly said that he and his cellmate would be searched, his cellmate was not searched. *Id.* ¶ 43. Finally, the Officers allegedly did not follow departmental procedures for conducting a strip-search and instead assaulted Mr. Rodriguez. *Id.* ¶ 48. Immediately before the

alleged assault, Mr. Rodriguez was allegedly complying with all directions and was not resisting the officers. *Id.* ¶ 49. These allegations plausibly allege that Defendants McGunndy, Doe 1, and Doe 2 acted with an intent to punish Mr. Rodriguez or, at a minimum took actions not reasonably related to a nonpunitive governmental purpose. *Frost*, 980 F.3d at 254 (finding that it would be excessive for officers to "tackle, kick, and drag" and inmate who had "insult[ed]" the officers because "our caselaw makes clear that it is unconstitutional for officers to strike an individual who is compliant and does not pose an imminent risk of harm to others").

Accordingly, the excessive force claim will proceed.

### C.  The Supervisory Liability Claim

Supervisors cannot be held liable merely because they hold these positions. The Second Circuit recently clarified the standard to be applied to a claim of supervisory liability. *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). The Second Circuit adopted the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that "after *Iqbal*, there is no special rule for supervisory liability." *Tangreti*, 983 F.3d at 618. "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

"A supervisor's 'mere knowledge of his subordinate's discriminatory purpose' is not sufficient because that knowledge does not 'amount[] to the supervisor's violating the Constitution.'" *Id.* at 616–17 (quoting *Iqbal*, 556 U.S. at 676–77); *see also Lopez v. Chappius*, No. 6:17-CV-06305 (EAW), 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (finding that receipt of communication insufficient to show personal involvement because "[e]ven before *Tangreti*, it was 'well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find that the defendant was personally involved in the

deprivation alleged'" (internal citation omitted)).

Thus, to plausibly state a deliberate indifference claim against a supervisor, Mr. Rodriguez must allege facts showing that the supervisor "acted intentionally to impose the alleged condition" or that he "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [he] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Mr. Rodriguez asserts a claim for supervisory liability against Defendants Warden Jane Doe, Deputy Warden Doe 3, and Lieutenant Doe 4, alleging that they failed to properly train and supervise the officers who used excessive force against him. *See* Compl. ¶¶ 109–15. Mr. Rodriguez's supervisory liability claim is also based on the alleged failure of Warden Jane Doe, Deputy Warden Doe 3, and Lieutenant Doe 4 to properly train and review defendants' McGunndy, Doe 1, Doe 2, and Bradey's compliance with department policies and rules. *See* Compl. ¶ 111.

Absent evidence of their personal involvement in the underlying claims, however, a failure to train or supervise does not state a cognizable claim for supervisory liability. *See Robinson v. Graham*, No. 9:20-cv-1610 (MAD/ML), 2021 WL 2358415, at *3 (N.D.N.Y. June 9, 2021) (dismissing claim against supervisor for failure to train and manage staff as "reminiscent of a 'supervisor liability' theory of liability for Section 1983 claims that is no longer available" after T*angreti*); *Boyd v. Larregui*, No. 3:19-cv-579 (CSH), 2020 WL 5820491, at *7 (D. Conn. Sept. 30, 2020) (dismissing claim for failure to train subordinates where plaintiff failed to establish personal involvement of supervisory defendant or "provide particular relevant deficiencies in the training program").

Mr. Rodriguez alleges only that he submitted requests to Defendants Deputy Warden Doe

3 and Lieutenant Doe 4 but did not receive responses. *See* Compl. ¶ 68. As explained above, the failure to respond to a complaint is insufficient to support a claim for supervisory liability. As a result, the supervisory liability claims against Defendants Deputy Warden Doe 3 and Lieutenant Doe 4 will be dismissed. Mr. Rodriguez does allege facts supporting Warden Jane Doe's involvement, that he spoke to her about the incidents, and she did not investigate the incident or take corrective action.

Accordingly, the supervisory liability claim will proceed as to Warden Jane Doe but will be dismissed as to Defendants Deputy Warden Doe 3 and Lieutenant Doe 4.

### D.  The Due Process Claim

Inmates have no constitutional entitlement to grievance procedures. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (stating that claim relating to grievance procedures "confuse[d] a state-created procedural entitlement with a constitutional right" and "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures'" (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003))).

Mr. Rodriguez includes no claims relating to the disciplinary hearing, The Court assumes, therefore, that his due process claim is based on his allegations that Lieutenant Bradey, Warden Jane Doe, Deputy Warden Doe 3, and Lieutenant Doe 4 told him that he could not file a grievance or appeal. *See* Compl. ¶ 58. While Mr. Rodriguez may argue that these statements rendered administrative remedies unavailable if Defendants argue that he has not exhausted his administrative remedies, they do not give rise to a due process claim. *See Riddick*, 731 F. App'x at 13.

Accordingly, Mr. Rodriguez's due process claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### E.  The Equal Protection Claim

"[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980) (emphasis omitted)). To state a plausible equal protection claim, therefore, Mr. Rodriguez "must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in . . . treatment was based on 'impermissible considerations.'" *See Nicholson v. Hannah*, No. 3:20-cv-209 (JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (citations omitted).

An equal protection claim also may be based on a claim that the inmate has been "irrationally singled out as a class of one." *Id.* (citation and internal quotation marks omitted). "To succeed on such a claim, plaintiff[] must show an extremely high degree of similarity between [himself] and the person to whom [he] compare[s himself]." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (citation and internal quotation marks omitted).

Mr. Rodriguez alleges that Officers McGunndy, Doe 1, and Doe 2 said that both he and his cellmate would be strip-searched but only searched Mr. Rodriguez. *See* Compl. ¶¶ 13, 43. In addition, the Officers said that the search was for pruno, which is an illogical reason for a strip search. *Id.* ¶ 13. At this stage of the case, these allegations are sufficient to state a plausible equal protection claim against Officers McGunndy, Doe 1, and Doe 2 based on a malicious bad faith intent to injure Mr. Rodriguez. *See Terminate Control Corp., v. Horowitz*, 28 F.3d 1335, 1353

(2d Cir. 1994) (affirming denial of summary judgment because there was a genuine dispute as to whether the defendants "singled out" the plaintiff company "with a malicious or bad faith intent to injure" it). As Mr. Rodriguez alleges no other facts showing that he was treated differently from other similarly situated inmates, any equal protection claim against the other Defendants will be dismissed under 28 U.S.C. § 1915A(b)(1).

Accordingly, the equal protection claim against Officers McGunndy, Doe 1, and Doe 2 will proceed, for now, but this claim will be dismissed as to all other Defendants.

### F.  The Official Capacity Claim

The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979).

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship." *Colabella v. Am. Inst. of Certified Pub. Accts.*, No. 10-cv-2291 (KAM) (ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citation omitted). As a result, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-cv-788 (VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). In *Orr*, the court dismissed the request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] only past actions." *Id.*

Mr. Rodriguez names Defendants in their individual and official capacities. *See* Compl. However, he seeks only damages as relief. *Id.* ¶¶ 116–20. And Mr. Rodriguez has not alleged

facts suggesting that the state has waived immunity in this case. Thus, as all Defendants are state officials, Mr. Rodriguez cannot obtain damages from any defendant in his or her official capacity. *See Graham*, 473 U.S. at 169. To the extent that Mr. Rodriguez named Defendants in their official capacities in connection with his passing reference to declaratory relief, the claim must be dismissed because Mr. Rodriguez does not state what declaratory relief he seeks. And because the Complaint relates to past alleged actions and he is no longer confined at the same facility, any request for declaratory relief would not be cognizable in any event. *See Orr*, 2018 WL 780218, at *7.

Accordingly, all claims for damages against Defendants in their official capacities will be dismissed under 28 U.S.C. § 1915A(b)(2).

## IV.   CONCLUSION

All claims against Defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(1) and (2). The due process claim against all Defendants; the equal protection claim against Defendants Bradey, Warden Jane Doe, Deputy Warden John Doe 3, and Lieutenant Doe 4; the conditions of confinement claim against Defendants Deputy Warden Doe 3, Lieutenant Doe 4, and Bradey; and the supervisory liability claim against Defendants Deputy Warden Doe 3 and Lieutenant Doe 4 are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The case will proceed on the excessive force claim against Defendants McGunndy, Doe 1, and Doe 2; the conditions of confinement claim against Defendants McGunndy, Doe 1, Doe 2, and Warden Jane Doe; the equal protection claim against Defendants McGunndy, Doe 1, and Doe 2; and the supervisory liability claim against Warden Jane Doe.

The Court enters the following additional orders.

15

(1)     The Clerk of Court shall contact the Department of Correction Office of Legal Affairs to ascertain a current service address for Officer McGunndy, mail a waiver of service of process request packet containing the Complaint and this Order to the Defendant at that address by **October 21, 2022,** and report to the Court on the status of the waiver request on **November 4, 2022**. If Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service on Defendant in his individual capacity and Defendant shall be required to pay the cost of such service.

(2)     The Clerk of Court shall send Plaintiff a copy of this Order.

(3)     The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The Defendant shall file his response to the Complaint, either an Answer or motion to dismiss, by **January 6, 2023**. If Defendant chooses to file an Answer, Defendant shall admit or deny the allegations and respond to the cognizable claim recited above. Defendant also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **May 5, 2023**. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed by **June 9, 2023**.

(7)     Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If Plaintiff changes address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Plaintiff must notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated.

Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of any new address.

(9)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As Local Court Rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

(10)     The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

(11)     The Court cannot effect service of the Complaint on Defendants Officer Doe 1, Officer Doe 2, or Warden Jane Doe without their full names and current work addresses. Mr. Rodriguez is directed to obtain this information through discovery and file a notice containing the information. Once Mr. Rodriguez files the notice containing service information, the Court will order service on the Doe defendants.

SO ORDERED. Dated this 27th day of September 2022 at Bridgeport, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge